AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

❏ Original

CLERK'S OFFICE
A TRUE COPY
Dec 09, 2020
s/ JeremyHeacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

## for the

### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. **20-M-480 (SCD)** |
| Unit 549 of the CubeSmart Self Storage, located at | ) |
| 5115 West Good Hope Road, Milwaukee, Wisconsin | ) |
| | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      12-23-20      *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ____Stephen C. Dries, United States Magistrate Judge____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*     ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:      12-9-20. 1:20 pm

*Judge's signature*

City and state:     Milwaukee, Wisconsin

Stephen C. Dries, United States Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*



CLERK'S OFFICE
A TRUE COPY
Dec 09, 2020
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of ⟩
*(Briefly describe the property to be searched* ⟩
*or identify the person by name and address)* ⟩
Unit 549 of the CubeSmart Self Storage, located at 5115 ⟩
West Good Hope Road, Milwaukee, Wisconsin ⟩

Case No. **20-M-480 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 843(b), and 846 | Conspiracy to distribute a controlled substance, distribution of a controlled substance, and possession with intent to distribute a controlled substance |

The application is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

SCOTT MARLOW Digitally signed by SCOTT MARLOW
Date: 2020.12.09 12:50:47 -06'00'

_____
*Applicant's signature*

Special Agent Scott Marlow, DEA
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 12/09/2020 _____

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Stephen C. Dries, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Scott Marlow, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the following premises, further described in Attachment A, for the evidence, fruits, and instrumentalities described in Attachment B:

> Unit 549 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, a secure self-storage facility with eight separate storage buildings. Unit 549 is in the fourth storage building facing south with the numerals "549" above the storage door and secured by a pad lock.

2.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been so employed since March 2006.  Prior to my current assignment, I was employed as a police officer with the West Allis Police Department for approximately nine years.  I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of, and to make arrests for federal offenses.

3.      I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws, firearms laws, and money laundering laws, including Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, and Title 18, United States Code, Sections 922, 924, 1956, and 1957, and other related offenses. More specifically, my training and experience includes the following:

> a.      I have utilized informants to investigate drug trafficking. Through informant interviews and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations finance, source, purchase, transport, and distribute controlled substances in Wisconsin and throughout the United States;

1

b. I have also relied upon informants to obtain controlled substances from drug traffickers, and I have participated in undercover purchases of controlled substances from drug traffickers;

c. I have extensive experience conducting street surveillance of individuals engaged in drug trafficking;

d. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, drug proceeds, and drug trafficking records were seized;

e. I have participated in numerous drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators;

f. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base, also known as crack cocaine, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

g. I am familiar with the language used over the telephone to discuss drug trafficking and know that the language is often limited, guarded, and coded.

h. I know that drug traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking operations. I also know that drug traffickers often change their phone numbers and cellular devices on a frequent basis to thwart law enforcement from tracking their phones and to conceal their identities. I know drug traffickers often use electronic devices, such as telephones, cellular devices, computers, and currency counting machines to generate, transfer, count, record, or store the information described above and conduct drug trafficking and money laundering. I also know that drug traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as e-mail and messaging services), and social media to facilitate these crimes. I am familiar with computers, cellular devices, pagers, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, and their drug proceeds. I know drug traffickers commonly maintain addresses or telephone numbers in books, papers, or in electronic devices,

2

which reflect names, addresses, or telephone numbers of their associates in the drug trade. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

i.  I know drug traffickers often register phones, mailboxes, bank accounts, electronic communication services, and other instrumentalities of drug trafficking in the names of others, also known as nominees, to distance themselves from instrumentalities used to facilitate drug trafficking.

j.  I know that drug traffickers commonly have in their possession, at their residences, and at other locations where they exercise dominion and control drugs, drug proceeds, firearms, ammunition, and records or receipts pertaining to such;

k.  I have been assigned to court-authorized wiretaps and have been trained to operate the equipment used to conduct such operations;

l.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase or title these assets in order to avoid scrutiny from law enforcement;

m.  I know that drug traffickers must keep large amounts of U.S. currency to maintain and finance their ongoing drug business. I know it is common for drug traffickers to secrete contraband, drug proceeds, and records of drug transactions in secure locations within their residences, their businesses, or other locations over which they maintain dominion and control. These secure locations include, but are not limited to safes, briefcases, purses, filing cabinets, and hidden storage areas in natural voids of a residence; and

n.  I know that drug traffickers often keep documents and records about the transportation, sourcing, ordering, sale, and distribution of controlled substances. I know it is common for persons involved in drug trafficking to maintain evidence about obtaining, secreting, transferring, concealing, or spending drug proceeds, such as currency, financial instruments, precious metals and gemstones, jewelry, books, real estate transactions, bank statements and records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks,

3

safe deposit box keys, and money wrappers. These items are maintained by the traffickers within residences (including attached and unattached garages), businesses, or other locations over which they maintain dominion and control.

4.    I have participated in numerous firearms and drug trafficking investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. This has led to evidence of the crimes under investigation and corroborated information already known or suspected by law enforcement. I have regularly used electronic evidence to find proof relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of suspects and conspirators.

5.    This affidavit is based upon my personal knowledge and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

6.    Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

7.    There is probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841, 843(b), and 846, including the things described in Attachment B, will be found in the location listed in Attachment A.

4

## PROBABLE CAUSE

8.       I am participating in an investigation centered on the distribution of fentanyl and heroin by Vance Fields (DOB: XX/XX/1984), also known as "Vito." In June 2019, case agents met with a source of information (herein referred to as SOI #1), who wished to provide information related to the drug trafficking and other illegal activities of several Milwaukee-area narcotics traffickers, one of whom SOI #1 knew as "Vito."

9.       SOI #1 described "Vito" as a black male with dark skin, a low fade haircut, approximately 35 to 40 years old, and approximately 5'6" to 5'8" tall with a muscular build. SOI #1 further indicated that he/she believed "Vito" was incarcerated at some point during 2017. SOI #1 indicated he/she had known "Vito" for "years" and knew "Vito" sold cocaine and heroin. SOI #1 further indicated that he/she had begun buying heroin from "Vito" within the past year, which referred to late 2018 to 2019.

10.      During the meeting with case agents, SOI #1 indicated he/she did not currently have a telephone number for "Vito," but did provide information about the Facebook page for "Vito" under the name "Vance Fields." SOI #1 displayed a photograph from the "Vance Fields" Facebook page to case agents, and SOI #1 confirmed the photo was the person SOI #1 knew as "Vito."

11.      SOI #1 indicated that he/she had heard that SOI #1's friend "Melvin Rattler" had been killed by FIELDS, prior to Rattler obtaining approximately $18,000 worth of narcotics. SOI #1 indicated FIELDS believed Rattler may have burglarized one of FIELDS's stash houses in Milwaukee, and FIELDS lost a kilogram of cocaine, approximately 300 grams of heroin, and $20,000 in U.S. currency. SOI #1 stated that he/she heard that FIELDS's vehicle had been observed by witnesses in the area immediately before and after Rattler's homicide, but that FIELDS said he was out of the state at the time. SOI #1 stated he/she began purchasing heroin

5

from FIELDS around September 2018. SOI #1 indicated each time he/she purchased heroin from FIELDS, he/she purchased 100 grams of heroin for $65 per gram.

**SOI #2[1]**

12.     In February 2020, case agents spoke with another source of information about the drug trafficking activities of FIELDS (herein referred to as SOI #2). SOI #2 told case agents that he/she knew a subject with the nickname "Vito" for more than 8 years and that "Vito" was distributing kilogram quantities of cocaine during that entire time. Recently, SOI #2 discovered that "Vito" had begun distributing heroin in the past two to three months. SOI #2 viewed an official photograph of Vance FIELDS and indicated FIELDS was the same person, who SOI #2 knew as "Vito."

13.     SOI #2 indicated that he/she began purchasing heroin from FIELDS in December 2019 on the south side of Milwaukee. FIELDS "fronted" SOI #2 30 grams of heroin. I know that "fronting" refers to selling narcotics on consignment. SOI #2 described the heroin as white in color. FIELDS charged SOI #2 $60 per gram, and SOI #2 was expected to pay approximately $1,800 to FIELDS at the time of their next transaction.

---

[1] For several reasons, case agents believe SOI #2's information is reliable and credible. Substantial parts of SOI #2's information have been independently corroborated and verified by law enforcement. SOI #2's information concerning the FIELDS DTO has been corroborated by other confidential sources, information obtained from various public databases, physical surveillance, electronic surveillance, and through controlled drug purchases. Additionally, SOI #2 has made statements against his/her penal interest related to his/her direct involvement in illegal activity, including narcotics trafficking in the Milwaukee area. SOI #2 has a pending arrest in Milwaukee County for a narcotics trafficking offense and was providing information in this investigation for consideration and was not receiving payment for his/her cooperation. SOI #2 is also under federal supervision and was cooperating for potential consideration in any revocation sentence. In summer 2020, SOI #2 tested positive for marijuana. SOI #2 is now the suspect in an assault and discharge of a firearm, which occurred in September 2020. SOI #2 has at least four prior felony convictions for narcotics trafficking, escape, and human trafficking offenses, along with multiple prior arrests that were referred to juvenile authorities. (This disclosure statement was previously corrected to reflect that SOI #2 has one open arrest, which is pending, not charged, that SOI #2 is on federal supervision, and that SOI #2 has four felony convictions rather than three felony convictions and one misdemeanor conviction.) SOI #2 is no longer cooperating with case agents. Nevertheless, case agents believe that SOI #2's information in this investigation remains reliable and credible.

14.     Approximately one and a half weeks later, SOI #2 met FIELDS again and was fronted another 30 grams. At the end of January 2020, FIELDS was fronting 50 to 100 grams of heroin to SOI #2. SOI #2 described the heroin as varying from white to tan.

15.     SOI #2 provided case agents the phone number (920) 809-5701 for FIELDS and stated that FIELDS had the phone number for approximately one month. SOI #2 indicated that FIELDS often changes phone numbers and provided case agents the most recent prior phone number for FIELDS as (262) 393-9362 and the second most recent number as (920) 407-9110. SOI #2 stated that when FIELDS changed his phone number, FIELDS would contact SOI #2 and provide the new number.

16.     SOI #2 stated he/she most recently spoke with FIELDS about 10 days prior to meeting with case agents, when SOI #2 obtained heroin from FIELDS. SOI #2 stated he/she met with FIELDS "in traffic," meaning in a vehicle, and obtained a significant amount of heroin from FIELDS. SOI #2 indicated he/she currently owed FIELDS approximately $3,000. SOI #2 stated that FIELDS drove a dark blue or black Dodge Caravan during the narcotics transaction.

17.     SOI #2 indicated that in September 2019 SOI #2 entered the black Dodge Caravan to obtain 100 grams of heroin from FIELDS. SOI #2 stated that he/she was seated in the front passenger seat of the black Dodge Caravan, and he/she observed FIELDS manipulate some "switches" or "buttons" to the area left of the steering wheel. Afterward, FIELDS pushed on an area in the dashboard of the black Dodge Caravan near the radio. SOI #2 said FIELDS then removed a large "drawer" from within the dashboard area. SOI #2 described the dashboard area of the black Dodge Caravan as "normal" prior to FIELDS removing the "drawer." SOI #2 stated that FIELDS removed the 100 grams of heroin from that area and observed numerous other clear, plastic bags, which SOI #2 also believed contained heroin. SOI #2 stated that he/she saw larger

bags of heroin than the one he/she was purchasing and estimated the overall amount of heroin contained in the hidden compartment within the black Dodge Caravan was greater than two kilograms.

18.     Case agents asked SOI #2 if he/she knew of any residences frequented or occupied by FIELDS, and SOI #2 provided specific directions and a description of a residence located at 9241 West Allyn Street, Apartment K, Milwaukee, Wisconsin. Case agents know that Vance FIELDS's brother Vincent Fields listed a residence of 9241 West Allyn Street, Apartment K, Milwaukee, Wisconsin with the Wisconsin Department of Transportation.

19.     Between March 2020 and the present, case agents have obtained several federal search warrants for historical and prospective location information for FIELDS's cell phone(s) with multiple assigned call numbers.

20.     That location information revealed previously unknown locations, subjects, and vehicles, which case agents believe FIELDS is using to further his drug trafficking activities. That location information allowed case agents to observe FIELDS's activities and patterns, so that case agents could better understand FIELDS's drug trafficking operations and network.

21.     For example, case agents were conducting surveillance of FIELDS on March 12, 2020, while using the location information from the phone. Case agents went to the area of 6021 North 42nd Street, Milwaukee, Wisconsin and observed FIELDS exit a residence, previously unknown to case agents, carrying a black duffle bag. FIELDS placed this duffle bag in the black Dodge Caravan, which case agents had previously observed FIELDS operating. Case agents followed FIELDS to 6461 North 54th Street, and case agents observed FIELDS remove the black duffle bag from the black Dodge Caravan and place the black duffle bag in the far back corner of the garage. The black Dodge Caravan displayed Wisconsin license plate AGZ-9793, which was

registered to Sasha WILLIAMS of 4251 North 47th Street, Milwaukee, Wisconsin. FIELDS exited the garage empty handed. FIELDS then entered the residence at 6461 North 54th Street and exited a short time later with a black suitcase. FIELDS then placed the black suitcase in a Ford Explorer, which had arrived at the residence, and the Ford Explorer then immediately left. Based on training and experience, case agents believe that FIELDS may have been storing drugs or drug proceeds at 6021 North 42nd Street.

22.     On March 17, 2020, case agents reviewed the phone's location information and observed the phone was in the area of 2957 North Sherman Boulevard, Milwaukee, Wisconsin. Case agents conducted surveillance in that area and observed a black male, who matched the physical description of FIELDS. This subject was wearing a surgical facemask, so case agents were unable to make a positive identification of the driver. This subject was driving a rental vehicle. Case agents served an administrative subpoena on the rental car company, and the records from that rental car company indicate that the subject had an open rental agreement with Nicole Goins, a resident of 2957 North Sherman Boulevard. Case agents believe that FIELDS may be using nominees to rent vehicles, so that FIELDS can conceal his drug trafficking from law enforcement.

23.     Case agents later reviewed the phone's location information from March 16, 2020 and learned that the phone traveled from Milwaukee to Chicago and then remained in Chicago for approximately 45 minutes before driving back to Milwaukee. Based on information provided by SOI #2, case agents believe that FIELDS obtained large, wholesale quantities of cocaine from a supplier in the Chicago area, possibly using a rental car in a nominee's name.

24.     On March 19, 2020, case agents reviewed FIELDS's location information, which revealed that he traveled from Milwaukee to Minneapolis, Minnesota on March 18, 2020, arriving

at about 4:57 p.m., but only remained in Minneapolis for approximately 90 minutes before returning to Milwaukee. The location information indicated that FIELDS traveled to Chicago on March 19, 2020. That information suggests that FIELDS's cell phone arrived to the vicinity of 5737 South Michigan Avenue, Chicago, Illinois at approximately 1:50 a.m. and then traveled northbound towards Milwaukee at approximately 2:21 a.m. FIELDS's cell phone was in the vicinity of 5003 North 55th Street, Milwaukee, Wisconsin at 3:48 a.m. Case agents conducted surveillance of that residence and observed the same rental vehicle parked in the yard of 5003 North 55th Street.

25.     Case agents requested utility information for the residence 5003 North 55th Street and learned the subscriber of the utility account was Tashiki RODGERS. RODGERS held the account at that residence since August 2017. The phone number listed on the utility account for RODGERS was 414-526-6232. A review of FIELDS's telephone toll records reflected that RODGERS's phone number was in contact with FIELDS's cell phone numbers between February 11, 2020 and May 7, 2020 with a total of 1,232 voice/text contacts, between May 7, 2020 and July 14, 2020 with a total of 1,618 voice/text contacts, and between July 2, 2020 and November 16, 2020 with a total of 2,923 voice/text contacts.

26.     On March 24, 2020, case agents conducted a controlled buy of heroin from FIELDS with SOI #2. During that controlled buy, case agents monitored the location information of FIELDS's cell phone while conducting in-person surveillance. Case agents observed FIELDS at the residence located at 6461 North 54th Street, Milwaukee, Wisconsin just before the controlled buy, and FIELDS's cell phone was located in the immediate vicinity of 6461 North 54th Street. Case agents observed FIELDS arrive at the controlled buy location and meet with SOI #2, while FIELDS's cell phone was also located in the immediate vicinity of the controlled buy location.

10

27.     On April 2, 2020, case agents conducted surveillance of FIELDS around 8:22 p.m. The location information placed FIELDS's cell phone in the immediate vicinity of 4269 North 71st Street. While conducting surveillance, case agents observed a red Dodge Journey displaying Florida license plate IYT-W78 parked in the 7100 block of West Marion Street. That vehicle is registered to the Avis Budget Group in the Florida Department of Transportation's database. Case agents served an administrative subpoena on the Avis Budget Group, which revealed that the vehicle was rented by FIELDS. On the rental agreement, FIELDS provided an address of 10413 West Kiehnau Avenue, Milwaukee, Wisconsin and a phone number of 414-514-7158. Case agents know that telephone number is associated with SASHA WILLIAMS.

28.     During the first monitoring period, case agents identified seven times when FIELDS's cell phone was in Chicago or Minneapolis. Based on training and experience, case agents believe that these trips are related to FIELDS's drug trafficking operation, because Chicago and Minneapolis are source cities for narcotics and the short stays at the destination relative to the travel time.

29.     On April 21, 2020, case agents conducted a controlled buy of heroin from FIELDS with SOI #2. Investigators surveilled the residence at 4269 North 71st Street, Milwaukee, Wisconsin at 2:20 p.m. The location information placed FIELDS's cell phone in the immediate vicinity of 4269 North 71st Street at 2:25 p.m. Investigators observed a white Mitsubishi Outlander displaying Virginia license plate USV5563 parked just west of the intersection at North 71st Street and West Marion Street. That vehicle is registered to the Avis Budget Group as a rental vehicle in the Virginia Department of Transportation's database.

30.     On or about April 27, 2020, FIELDS contacted SOI #2 and invited him/her to meet with FIELDS at the residence of another person located at 7723 West Sheridan Avenue, Apartment

Case 2:20-mj-00480-SCD   Filed 12/09/20   Page 14 of 30   Document 1

C, Milwaukee, Wisconsin. When SOI #2 arrived at that location, SOI #2 observed FIELDS count out $100,000 in U.S. currency from one of two grocery-style bags on the kitchen table. The second bag contained additional U.S. currency, also believed to be approximately $100,000. FIELDS informed SOI #2 and the other person that he was traveling to Minnesota to "get good." Case agents believe that FIELDS was indicating that he was traveling to Minneapolis, Minnesota to obtain narcotics.

31.     During the monitoring period from May 28, 2020 to June 27, 2020, case agents monitored the location FIELDS's cell phone, which showed him regularly traveling to and from the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin. Between May 29, 2020 and June 25, 2020, the phone was in the vicinity of that CubeSmart location at least 17 times.

32.     Through an administrative subpoena, case agents received a "rent roll" listing customers renting storage units at CubeSmart Self Storage. A review of that "rent roll" revealed that SASHA WILLIAMS, a known associate of FIELDS, rented storage units at that facility.

33.     On June 22, 2020 at approximately 7:15 a.m., case agents conducted surveillance using the location information for FIELDS's cell phone. At that time, the phone was in the immediate vicinity of the residence located at 5003 North 55th Street, Milwaukee, Wisconsin. Case agents had previously observed FIELDS at this location during prior monitoring periods. During that surveillance, case agents observed a green Dodge Caravan backed up to the detached garage of the residence. A Wisconsin license plate was in the front dashboard of the vehicle, but unreadable from the street.

34.     Later on June 22, 2020 at about 3:30 p.m., case agents conducted surveillance. That location information showed that FIELDS's cell phone was in the immediate vicinity of 2955-

12

2957 North Sherman Boulevard, Milwaukee, Wisconsin at about 3:37 p.m. Case agents observed the same green Dodge Caravan parked on North Sherman Boulevard in front of that residence. The license plate displayed on the rear of the vehicle was Wisconsin license plate MX-4117.

35.     A check of the Wisconsin Department of Transportation records revealed that the vehicle was registered to "To & From Transportation Services" with an address of 4251 North 47th Street, Milwaukee, Wisconsin. Case agents know that address was one of Sasha WILLIAMS's prior residences. A further check of "To & From Transportation Services" revealed that the business is registered in the name of Sasha WILLIAMS.

36.     On June 29, 2020, case agents monitored the location of FIELDS's cell phone and noticed that the phone was traveling southbound from the Milwaukee area. Based on the path of travel, case agents believe that FIELDS likely traveled to meet his source of supply in Chicago. Case agents notified agents in Chicago, who conducted surveillance of FIELDS. At 11:43 a.m., a case agent observed FIELDS exit the apartment building at 5741 South Michigan Avenue, Chicago, Illinois. FIELDS was carrying a red plastic bag, which contained two shoeboxes, and was wearing a backpack. The case agent observed FIELDS enter the driver door of a black Dodge Journey and depart the area. A check of the Wisconsin Department of Transportation's records revealed that the vehicle was a 2018 Dodge Journey registered to Sasha R. Williams.

37.     On August 13, 2020, case agents noted that FIELDS's cell phone was traveling from Milwaukee, Wisconsin to San Francisco, California on a commercial airline. On August 16, 2020, investigators observed that FIELDS's cell phone was returning to Milwaukee, Wisconsin using ground transportation.

38.     On August 17, 2020, investigators coordinated with the Nebraska State Patrol to locate FIELDS as he traveled through Nebraska. That day, Trooper Ryan Hayes of the Nebraska

13

State Patrol observed a black Chrysler 300 displaying California license plate 8LUW769. Trooper Hayes observed that the passenger of the vehicle matched the description of FIELDS. Trooper Hayes stopped the vehicle for an equipment violation and made contact with the driver Nicole GOINS and the passenger FIELDS.

39.     As a result of their investigation, troopers deployed a drug detection canine, which indicated the presence of narcotics on the vehicle. The troopers searched the vehicle and seized approximately five pounds of marijuana in five separate vacuum-sealed bags. Four bags were in a blue suitcase along with men's clothing. One bag was in a suitcase with women's clothing.

40.     Both FIELDS and GOINS were arrested for possession of marijuana with intent to distribute, possession of more than one pound of marijuana, and no drug tax stamp in violation of Nebraska law. During that traffic stop, search, and arrest, the troopers found three cellular devices—one of the devices was on Goins's person and two of the devices were found in the vehicle. One of the devices was consistent with the make, model, and identifying information of the device listed in the subscriber information obtained pursuant to the search warrants discussed above. FIELDS and GOINS were processed and later released after posting cash bond.

### SOI#3[2]

41.     In early August 2020, agents of the Wisconsin Department of Justice's Division of Criminal Investigation debriefed another source of information (SOI #3), who identified a male

---

[2] For several reasons, case agents believe SOI #3 is reliable and credible. Substantial parts of SOI #3's information have been independently corroborated and verified by law enforcement. SOI #3's information concerning the FIELDS DTO has been corroborated by other sources of information, information obtained from various public databases, physical surveillance, and through a controlled drug purchase. Additionally, SOI #3 has made statements against his/her penal interest related to his/her direct involvement in illegal activity, including narcotics distribution in the Milwaukee area. SOI #3 has a pending arrest in Milwaukee County for a narcotics possession offense and is providing information in this investigation for judicial consideration and is not receiving payment for his/her cooperation. SOI #3 has a criminal history for larceny and traffic offenses.

subject, Robert Bean, who acts as a middleman for multiple drug dealers in greater Milwaukee. SOI #3 first met Bean in the summer of 2019. SOI #3 stated Bean had shown SOI #3 large quantities of heroin and cocaine, and SOI #3 had made purchases of heroin from Bean. SOI #3 learned that Bean obtained quantities of heroin from an individual named "Vito." During the transactions, SOI #3 said Bean would drive with SOI #3 to meet with "Vito," usually in the area of Mill Road in northwest Milwaukee.

42.     During the week of October 5, 2020, an undercover officer and SOI #3 conducted a controlled purchase of approximately 50 grams of heroin in Milwaukee from Bean, under the supervision of case agents. Prior to the transaction, SOI #3 placed a call to Bean to order the heroin. Bean said he would obtain the heroin from "V," referring to "Vito," later identified as FIELDS.

43.     The undercover and SOI #3 departed the neutral location and picked up Bean at a residence on North 12th Street and West Wright Street in Milwaukee. While in transit, Bean directed the undercover and SOI #3 to the area of North 51st and West Villard Avenue. Moments after the undercover, SOI#3, and Bean arrived, case agents observed a grey Dodge Caravan pull up and stop on West Villard near North 51st Street. Additional surveillance agents positively identified FIELDS as the driver and sole occupant of the grey Dodge Caravan. The undercover handed Bean $3,000 in pre-recorded buy money. Bean then exited the undercover vehicle and approached the gray Dodge Caravan, entering the front passenger seat. Minutes later, Bean exited the grey Dodge Caravan, and returned to the undercover vehicle, which departed the area. At this time, Bean handed SOI #3 a clear bag containing a tan chunky substance. SOI #3 immediately handed the bag and its contents to the undercover.

44.     Additional case agents followed the grey Dodge Caravan from the area, as FIELDS traveled to North 55th Street and parked just south of West Fairmount Avenue. FIELDS exited the

15

Dodge Caravan, and entered the side door to 5003 North 55th Street, Milwaukee, Wisconsin. Case agents later conducted a field test of the tan chunky substance weighing approximately 50.31 grams, which tested positive for the presence of heroin.

45.     Case agents learned the Dodge Caravan was a rental vehicle from EAN Holdings, the holding company for Enterprise. Case agents sent an administrative subpoena to EAN Holdings, requesting the current renter of the vehicle. The response listed Nicole Goins (DOB: 10/04/1978) with an address of 2957 North Sherman Boulevard, Milwaukee, Wisconsin and a telephone number 414-758-3631, as the current renter of the Dodge Caravan.

46.     On October 9, 2020 the Honorable Nancy Joseph signed a warrant authorizing case agents to obtain location information for FIELDS's cell phone.

47.     On October 13, 2020, the Honorable Nancy Joseph authorized a tracking warrant for the Dodge Caravan used by FIELDS. On October 15, 2020, case agents successfully installed the tracking device on the Dodge Caravan.

48.     On October 16, 2020, case agents monitored the tracking device on the Dodge Caravan, which showed it traveling from Milwaukee, Wisconsin to Chicago, Illinois. Case agents coordinated with agents in Chicago, who established surveillance in the immediate area of 5741 South Michigan Avenue, Unit 1, Chicago, Illinois—the residence of Charles McMILLAN, FIELDS's suspected source of heroin. At approximately 12:04 p.m., case agents observed FIELDS arrive in the area in the Dodge Caravan. FIELDS exited the vehicle carrying an empty plastic grocery bag, and entered 5741 South Michigan Avenue, after momentarily waiting at the front entrance. At approximately 12:38 p.m., case agents observed FIELDS exit the residence carrying a grocery bag, which appeared to contain an item the size and shape of a book. Case agents believe

FIELDS obtained approximately one kilogram of heroin from McMILLAN while inside. FIELDS later returned to the Milwaukee area in the Dodge Caravan.

49.     On October 19, 2020, case agents monitored the tracking device on the Dodge Caravan. At approximately 6:33 a.m., the vehicle was located at 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin.  At 9:53 a.m., electronic surveillance showed the vehicle travel to CubeSmart Self Storage, located at 5515 West Good Hope Road, Milwaukee, Wisconsin. Investigators previously learned that two girlfriends of FIELDS—Sasha WILLIAMS and Tashiki RODGERS—are currently renting storage units at the facility.

50.     As described above, investigators have determined that WILLIAMS is an integral part of the FIELDS's drug trafficking operation, in that FIELDS uses vehicles registered to WILLIAMS to further his drug trafficking. Sasha WILLIAMS is currently renting Unit 549, and Tashiki RODGERS is currently renting Unit 526, at the CubeSmart. At approximately 9:40 a.m., the grey Dodge Caravan appeared in front of Unit 526 for a short period of time.  After leaving the storage facility, investigators monitored the tracking device as it traveled to 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin.  Electronic surveillance of the grey Dodge Caravan showed the vehicle travel south of Milwaukee towards Chicago. At approximately 4:46 p.m., electronic monitoring indicated that the grey Dodge Caravan arrived at 5741 South Michigan Avenue, Unit 1, Chicago, Illinois, the residence of FIELD's source of supply, Charles McMILLAN. At approximately 5:05 p.m., electronic surveillance indicated that the grey Dodge van left McMILLAN's residence, and then drove to the area of Lansing, Illinois, and then eventually returned to the Milwaukee area.

51.     On October 20, 2020, an undercover officer conducted a controlled purchase of approximately 50 grams of heroin in Milwaukee from Robert BEAN, a middleman for multiple

17

drug dealers in the greater Milwaukee area. SOI #3 had learned that BEAN obtained quantities of heroin from FIELDS in the area of North Mill Road in northwest Milwaukee. (On October 6, 2020, the undercover officer and SOI #3 conducted a controlled purchase from BEAN. After the controlled purchase, the undercover officer was allowed to make direct contact with BEAN.)

52.     The undercover officer made contact with BEAN, and BEAN directed the undercover officer to the area of North 60th Street and West Villard Avenue in Milwaukee. Upon arrival, the undercover officer made contact with BEAN. BEAN directed the undercover officer to enter BEAN's vehicle, which was determined to be a silver Chevrolet SUV. Surveillance units observed the undercover enter the vehicle and sit in the rear passenger seat of the vehicle. The undercover officer gave the middleman $3,000 in pre-recorded buy money.

53.     At this same time, additional investigators monitored the tracking device on the Dodge Caravan, which had arrived in the area of 5003 North 55th Street, Milwaukee, Wisconsin. A case agent observed FIELDS park his vehicle across from the residence of 5003 North 55th Street.

54.     At 11:56 a.m., a case agent observed FIELDS exit 5003 North 55th Street, enter the driver seat of a 2019 Dodge Caravan, and leave. Surveillance units observed FIELDS drive northbound on North 55th Street and then westbound on West Villard Avenue, before entering the same parking lot where BEAN and the undercover were sitting in BEAN's vehicle. At 11:58 a.m., another case agent observed BEAN exit the front passenger door of the silver Chevrolet vehicle and walk to the passenger side of FIELDS's 2019 Dodge Caravan. BEAN entered the passenger-side of the vehicle, exited shortly after, and began walking across the parking lot back toward the silver Chevrolet occupied by the undercover officer. BEAN provided the undercover officer a

plastic bag that contained a tan chunky substance, suspected to be heroin. Case agents conducted a preliminary test of the substance which returned a positive result for heroin.

55.    Case agents conducted post-buy surveillance of FIELDS, who appeared to conduct a hand-to-hand transaction with an unknown black male in the area of 3931-3933 North Sherman Boulevard, Milwaukee, Wisconsin.  Approximately an hour later, the tracking device showed the Dodge Caravan in the rear alleyway behind 2957 North Sherman Boulevard, a residence associated with Nicole Goins. The tracking device then showed the Dodge Caravan travel to General Mitchell International Airport, at the rental vehicle return lot. Case agents later removed the tracking device from the Dodge Caravan, and contacted Enterprise Rent-A-Car, who advised Goins had returned the Caravan, and rented a grey Chrysler Pacifica, bearing Wisconsin license plate AGB-4479.

56.    On November 6, 2020, case agents conducted an undercover purchase of heroin from FIELDS through BEAN. The undercover officer contacted BEAN around 11:50 a.m., and BEAN directed the undercover officer to meet him in the "area where they met before." Case agents know that was in the area of North 60th Street and West Villard Avenue.

57.    The undercover officer was provided $7,500 in pre-recorded buy funds and departed the offices of the North Central HIDTA. Case agents followed the undercover officer as he drove to the location he was directed to by BEAN. Around the same time, a case agent observed FIELDS arrive at 5003 North 55th Street, open the door with a key, and then enter. Case agents reviewed the electronic location information for FIELDS's cell phone and observed the phone was in the vicinity of 5003 North 55th Street.

58.    A case agent observed FIELDS leave 5003 North 55th Street, enter a green Dodge Caravan, and drive southbound toward West Hampton Avenue. FIELDS drove out of the case agent's view.

59.     While driving to the buy location, the undercover officer was contacted by BEAN and told to meet at the corner of North 51st Boulevard and West Villard Avenue. Around 12:09 p.m., a case agent observed FIELDS's vehicle parked in the parking lot of Villard Food and Liquor, located at 5123 West Villard Avenue. Case agents reviewed the location information of FIELDS's cell phone and observed the phone was in the vicinity of the store.

60.     The undercover officer arrived in the area of 5123 West Villard Avenue and observed BEAN in the parking lot of the business. Surveillance units observed BEAN enter the undercover vehicle briefly and exit carrying a small paper bag, in which the undercover officer had placed the pre-recorded buy money. BEAN entered the front passenger seat of FIELDS's green Dodge Caravan, and the undercover officer believed he observed BEAN and FIELDS counting the pre-recorded buy money. A short time later, BEAN exited FIELDS's vehicle and approached the undercover vehicle carrying the same small paper bag. BEAN handed the bag to the undercover officer.

61.     FIELDS and the undercover officer departed the parking lot simultaneously at approximately 12:30 p.m. A case agent observed FIELDS arrive and park the vehicle in the driveway of 5003 North 55th Street moments after FIELDS departed the parking lot of 5123 West Villard Avenue. The case agent observed FIELDS enter 5003 North 55th Street through the west facing door. A short time later, the case agent observed FIELDS exit the residence, enter the green Dodge Caravan, and leave the area. At that time, surveillance ended.

62.     Case agents met the undercover officer at the offices of the North Central HIDTA and retrieved the small paper bag that BEAN gave to the undercover officer. Contained within the paper bag was a plastic bag with two chunks of an off white/tan substance, which case agents believed to be heroin. The substance was weighed and found to be approximately 125 grams.

Special Agent Jeff Milam subjected a sample of the substance to the Nark II Meckes field test and received a positive result for the presence of heroin. A later test by the DEA's North Central Laboratory showed that the substance contained a mixture of fentanyl, heroin, and quinine.

63.    On November 16, 2020, the Honorable William Duffin authorized the installation of a GPS tracking device for a vehicle operated by FIELDS—a 2013 Dodge Caravan with Wisconsin license plate AGZ-9793. Case agents installed the GPS tracking device on November 17, 2020.

64.    On November 22, 2020, case agents observed the 2013 Dodge Caravan travel from the area of 9096 North 95th Street in Milwaukee to 5741 South Michigan Avenue in Chicago. Case agents know this location is the residence of Charles McMILLAN. The 2013 Dodge Caravan was in the area of 5741 South Michigan Avenue at 10:21 a.m. Case agents reviewed the location information for FIELDS's cell phone and observed the phone traveled to the area around that same time. The electronic location information showed that FIELDS's cell phone was on I-90 southbound near Fuller Park, Illinois at 10:16 a.m. This area is approximately one mile from McMILLAN'S residence.

65.    On December 1, 2020, case agents reviewed the location information for FIELDS's cell phone. At 7:12 a.m., case agents noted that FIELDS's cell phone was in the vicinity of 7010 North 55th Street, Apartment G. A case agent arrived at that location at approximately 7:30 a.m. and observed the green 2002 Dodge Caravan with Wisconsin license plate MX-4117 parked facing westbound on West Hustis Street. At approximately 9:44 a.m., the case agent observed FIELDS exit the door of 7010 North 55th Street, Apartment G and walk to the green Dodge Caravan. FIELDS entered the driver seat and started the vehicle and departed at approximately 9:44 a.m.

Between 7:30 a.m. and 9:44 a.m., FIELDS's cell phone remained in the vicinity of 7010 North 55th Street, Apartment G, while the case agent was on surveillance.

66. On December 8, 2020, case agents presented an application for search warrants allowing a certified drug detection canine to conduct sniffs at the exterior of Unit 526 and Unit 549 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, and the exterior of 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin. This application was reviewed and search warrants were authorized by the Honorable Stephen C. Dries. Later that day, Police Officer Christopher Conway deployed K-9 "FLEXY" to conduct sniffs for odors of controlled substances, as authorized. Officer Conway is the current handler of the Drug Detection Canine "FLEXY." "FLEXY" is trained to detect the odor of controlled substances, including marijuana, cocaine, heroin, fentanyl, methamphetamine, and other dangerous drugs with chemical processing similarities.

67. Pursuant to Officer Conway's training and experience as a police K-9 handler, Officer Conway told Special Agent Scott Marlow that K-9 "FLEXY" "alerted" to the odor of narcotics at the front door of 7010 North 55th Street, Apartment G, but did not alert at Unit 526 or Unit 549 of the CubeSmart Self Storage.

68. I know that a "drug detection canine" is trained to detect the odor of controlled substances, including marijuana, cocaine, heroin, fentanyl, and other dangerous drugs with chemical processing similarities. I know that upon the detection of the odor of these controlled substances, the dog's behavior will change and that the dog is trained to come to a final response called an "alert." This "alert" may also indicate items recently contaminated with, or associated with, the odor of one or more of the controlled substances.

69.     On December 8, 2020, case agents observed FIELDS's cell phone and the GPS tracking device on FIELDS's vehicle moving towards Chicago, Illinois. Case agents coordinated with local law enforcement officers in Racine, Wisconsin to conduct a traffic stop of FIELDS's vehicle. A trooper stopped FIELDS's vehicle, and found GOINS in the driver's seat and FIELDS in the passenger seat. A drug detection canine was deployed and alerted to the vehicle. The trooper searched the vehicle and found approximately 1 kilogram of suspected heroin in the rear passenger seat floorboard of the vehicle. FIELDS and GOINS were arrested and taken into custody.

70.     During that traffic stop, GOINS used a cell phone to contact SASHA WILLIAMS and told WILLIAMS about the traffic stop.

71.     On December 9, 2020, case agents executed search warrants issued by the Honorable Stephen C. Dries at the following premises associated with FIELDS:

- 5003 North 55th Street, Milwaukee, Wisconsin 53218;

- 9241 West Allyn Street, Apartment K, Milwaukee, Wisconsin 53224;

- 2957 North Sherman Boulevard, Milwaukee, Wisconsin 53210;

- 9096 North 95th Street, Apartment C, Milwaukee, Wisconsin 53224; and

- 7010 North 55th Street, Apartment G, Milwaukee, Wisconsin 53223.

72.     At 5003 North 55th Street, Milwaukee, Wisconsin, the residence of Tashiki Rodgers, case agents found eight handguns, seven rifles, an unknown amount of money, ballistic armor, approximately 1,088 grams of suspected heroin, approximately three pounds of suspected marijuana, two hydraulic presses, a U.S. currency counter, and a large duffel bag containing narcotics distribution material.

73.     Case agents spoke with RODGERS, who stated that she rented Unit 526 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, on behalf

of VANCE FIELDS. RODGERS stated that she has not been at the storage unit since August 2020, and said that she rents the storage unit to store FIELDS's Dodge Durango. RODGERS also provided consent for case agents to search Unit 526 of the CubeSmart Self Storage.

74.     Based on a search of the Wisconsin Department of Transportation's database, case agents know that Sasha WILLIAMS and FIELDS are co-registered owners of a silver 2017 Dodge Durango bearing Wisconsin license plate ACP-5087.

75.     Case agents then searched Unit 526 and found children's toys. The Dodge Durango was not inside of Unit 526. However, case agents also knew that SASHA WILLIAMS, another associate of FIELDS, also rented a storage unit at that facility—Unit 549. Case agents had recovered keys to a padlock and keys to a Dodge vehicle during the traffic stop of FIELDS and GOINS on December 8, 2020.

76.     Case agents asked WILLIAMS for consent to search Unit 549, but WILLIAMS refused to give consent. Case agents tested the electronic keys to the Dodge vehicle while at the CubeSmart Self Storage, and heard a vehicle inside of Unit 549 make an audible noise in response to the keys. Case agents also tested the padlock keys taken from FIELDS during the traffic stop on the padlock on Unit 549, and found that the keys matched the padlock.

77.     WILLIAMS stated that she is the listed tenant for the storage unit, but does not have control of the key to gain entry into the unit. WILLIAMS also said that FIELDS is the one who is in control of the unit, and that the white Dodge Durango is parked inside. WILLIAMS stated that she is the registered owner of the vehicle and pays the vehicle loan.

78.     Based on the foregoing, I believe there is probable cause to search the premises described in Attachment A for fruits, evidence, and instrumentalities of these crimes as further described in Attachment B.

*Location to be Searched*

The property to be searched is Unit 549 of the CubeSmart Self Storage, located at 5115 West Good Hope Road, Milwaukee, Wisconsin, a secure self-storage facility with eight separate storage buildings. Unit 549 is in the fourth storage building facing south with the numerals "549" above the storage door and secured by a pad ock.





## ATTACHMENT B

*Property to be seized*

1.      All evidence, fruits, and instrumentalities of or used as a means to commit violations of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846, those violations involving VANCE FIELDS and others known and unknown, and occurring after January 1, 2013, including:

      a.   Controlled substances;

      b.   Paraphernalia associated with the manufacture and distribution of controlled substances, including scales, measuring devices, weighing devices, packaging materials, and containers, bags, or boxes to hold or transport controlled substances;

      c.   Proceeds of drug trafficking activities, such as currency, crypto currency, precious metals, financial instruments, jewelry, and documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of drug trafficking activities;

      d.   Bank account records, loan documents, wire transfer records, money order receipts, postal express mail envelopes, bank statements, safe deposit box keys and records, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the sale of controlled substances, or financial transactions related to the trafficking of controlled substances;

      e.   Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity, or times when controlled substances were obtained, transferred, sold, distributed, or concealed;

      f.   Personal telephone books, address books, telephone bills, photographs, letters, cables, telegrams, facsimiles, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities among and between members and associates involved in drug trafficking activities;

      g.   Records of off-site storage locations, including but not limited to safe deposit box keys and records, and records and receipts and rental agreements for storage facilities;

      h.   Records and information related to travel for purposes of drug trafficking, such as passports, airline tickets, bus tickets, vehicle rental receipts, credit card receipts,

taxi cab receipts, hotel and restaurant receipts, canceled checks, maps, and records of long distance calls reflecting travel;

i.  Indicia of occupancy, residency, or ownership of the premises, vehicles, and things described in the warrant, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, addressed envelopes, escrow documents, and keys;

j.  Photographs, videotapes, or other records of assets, co-conspirators, or controlled substances;

k.  Cellular telephones, text messaging systems, desktop computers, laptop computers, tablets, other communication devices, and electronic storage devices (including but not limited to thumb drives, compact discs, DVDs, floppy discs, external hard drives), and any and all records associated with and stored within such communications services or storage devices;

l.  Records and information relating to a conspiracy to distribute, manufacture, dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance;

m.  Records and information relating to the distribution, manufacture, dispensing, or possession with the intent to manufacture, distribute, or dispense a controlled substance;

n.  Records and information about customers, including lists of customers and related identifying information;

o.  Records and information relating to the types, amounts, and prices of drugs imported, trafficked, and distributed as well as dates, places, and amounts of specific transactions; and

p.  Records and information relating to sources of drugs (including names, addresses, phone numbers, or any other identifying information).

27